Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Meaghan E. Murphy, Esq. #102770 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Alexander E. Brody, Esq. # 1025332 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
mmurphy@melandbudwick.com
gbenezra@melandbudwick.com
abrody@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively Consolidated with:<br><br>\| 19-50130-gs \| DC Solar Solutions, Inc. \|<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \| |
| CHRISTINA W. LOVATO,<br><br>Plaintiff,<br><br>v.<br><br>AHERN RENTALS, INC. and XTREME MANUFACTURING, LLC,<br><br>Defendants. | Adversary No.: 22-05001-gs<br><br>**TRUSTEE'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [ECF No. 6]**<br><br>**Hearing Date:  May 19, 2022**<br>**Hearing Time: 9:30 a.m.** |

Christina W. Lovato, as chapter 7 trustee ("***Trustee***") for the bankruptcy estates of DC Solar Solutions, Inc., DC Solar Distribution, Inc., DC Solar Freedom, Inc. (together, "***DC Solar***") and Double Jump, Inc. ("***DJ***," and with DC Solar, the "***Debtors***"), files her Response in Opposition to the Motion to Dismiss ("***MTD***") filed by defendants Ahern Rentals, Inc. ("***Ahern***") and Xtreme Manufacturing, LLC ("***Xtreme***," and together with Ahern, the "***Defendants***") [ECF No. 6].

1

I.      **PRELIMINARY STATEMENT**

The Defendants knowingly joined and assisted the Carpoff Ponzi Scheme, one of the largest Ponzi schemes in U.S. history.

The Trustee has sued the Defendants to avoid and recover ~$33 million in transfers made by DC Solar to the Defendants ("***Avoidance Claims***"), and for other relief.

In response to the Trustee's complaint [ECF No. 1] ("***Complaint***"), the Defendants filed their MTD challenging the Trustee's Avoidance Claims. The Defendants' arguments mislead, lack legitimate basis, and conceal (sometimes binding) Ninth Circuit decisional law from this Court.[1] The Trustee has more than adequately pled her Avoidance Claims. The MTD is merely an effort to delay this proceeding and should be denied.

**First**, the Defendants argue that the Trustee lacks standing to bring her claims. In support, the Defendants cite decisional law regarding a bankruptcy trustee's standing to assert ***tort*** claims – not only is this law wholly inapposite, but the Defendants fail to cite Ninth Circuit law that the Trustee has the exclusive standing to bring her Avoidance Claims.

**Second**, the Defendants argue that the equitable doctrine of *in pari delicto* ("***IPD***") bars the Trustee's claims. Again, the Defendants cite decisional law regarding a trustee's prosecution of ***tort*** claims, failing to cite Ninth Circuit law that IPD – a part of the doctrine of Unclean Hands – is flat-inapplicable to the Trustee's Avoidance Claims.

**Third**, the Defendants make a disconnected argument that the Trustee has failed to satisfy Rule 9(b). While Rule 9(b)'s specificity requirement does apply to the Trustee's pleading of her actual fraudulent transfer claims, the Defendants, again, fail to cite decisional law in accord with the explicit statutory language that it is *the intent of the transferor* and not (as the Defendants argue) the transferee, that is relevant. The Trustee has pled exactly what is required of her, and the Defendants are wrong.

---

[1] The Trustee does not seek sanctions in this response. However, the Defendants' MTD – by repeatedly failing to cite adverse and controlling authority – violates ethical rules (*e.g.,* candor to the Court) and is sanctionable. *See e.g., Luna v. P & M Healthcare Holdings, Inc.,* 2022 WL 883472, *2 (C.D. Cal. Mar. 11, 2022). The Defendants have wrongly multiplied these proceedings. *Cf.* 28 U.S.C. § 1927. The Trustee reserves all rights if this strategy is repeated.

And the Defendants argue that the 11 U.S.C. § 547(c)(2) affirmative defense should be applied to defeat the Trustee's preference claims; not only do the Defendants bear the burden and their argument directly contradicts the Trustee's allegations, but again, the Defendants fail to cite binding Ninth Circuit law which states that this defense is inapplicable where the transfers were made in connection with a Ponzi scheme, as the Trustee pleads here.

Respectfully, this Court should reject the Defendants' arguments and deny the MTD.

## II.    FACTUAL BACKGROUND

The Trustee alleges the following facts in her Complaint, all of which are to be taken as true and with all reasonable inferences drawn solely in the Trustee's favor.

### (A) DC Solar and the Carpoff Ponzi Scheme

DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators ("*MSGs*").[2] DC Solar had some legitimate business and some non-wrongdoing owners, executives, officers, and employees with varying levels of control over DC Solar at various points in time.[3]

Generally, the financing-end of the business purported to work as follows: Solutions would manufacture and sell MSGs for $150,000 each. The buyers were typically tax equity funds owned by a financial investor seeking investment federal tax credits. The buyers paid Solutions a down payment and executed a promissory note for the remaining balance of the purchase price. The buyers would lease the MSGs to Solutions' affiliate, Distribution, which in turn purported to sub-lease the MSG to a third-party end-user/sub-lessee. The end-user's/sub-lessee's lease payments were intended (purportedly) to cover the interest payments on the promissory note.[4] Over the years, Solutions closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.[5]

However, certain of DC Solar's former insiders, including Carpoff, were also perpetrating

---

[2] Compl., ¶ 8.
[3] Compl., ¶¶ 18, 118-19.
[4] Compl., ¶ 9.
[5] Compl., ¶ 13.

3

a Ponzi scheme through DC Solar and other entities.[6] The Trustee alleges as follows.

15. Carpoff caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed by earlier buyers. This was contrary to Carpoff's representations (directly or indirectly) to the financial investors that sub-lessee revenue would pay those obligations. And while Carpoff (directly and indirectly) communicated to the financial investors that DC Solar had manufactured over 15,000 MSGs, the actual figure was far less. Moreover, although Carpoff (directly or indirectly) represented to the financial investors that DC Solar had a series of sublessees willing to pay to utilize the MSGs, some sub-leases were real but others were not.

16. Further, Carpoff looted DC Solar to, among other things, fund his lavish lifestyle, including through casino gambling and the use of private jets and the purchase of real and personal property (such as automobiles). And Carpoff looted DC Solar to, among other things, pay-off coconspirators and make payments such as marketing payments (legitimate or illegitimate) to third parties. This all was intended, in material part, to further the Carpoff Ponzi Scheme and/or create the perception that DC Solar was profitable.

17. Because of (among other things) the harm that Carpoff inflicted upon DC Solar through his wrongdoing, including the liabilities Carpoff created for DC Solar, including the Carpoff Ponzi Scheme, DC Solar was insolvent on the dates of the Total Transfers (defined below).[7]

**(B) The Defendants' Knowing Involvement in the Carpoff Ponzi Scheme**

Carpoff could not have perpetrated his Ponzi scheme without assistance from compliant business partners. Ahern Rentals and Xtreme (the Defendants), through their joint owners and senior management, served in this deviant and wrongful role.[8]

At all relevant times, Ahern Rentals and Xtreme were closely affiliated. They shared owners, officers, and controlling persons. They pursued a joint business strategy to benefit both companies. At the top of the pyramid for both companies was: (1) Don Ahern and Evan Ahern; (2) the Senior Team; (3) a steering committee; and (4) certain individuals who served as senior management and strategic oversight and planning for both companies.[9]

In 2013, Don Ahern and Evan Ahern met with Carpoff and agreed that: (1) Xtreme, a heavy

---

[6] Compl., ¶ 14-17.
[7] Compl., ¶¶ 15-17.
[8] Compl., ¶¶ 78-103.
[9] Compl., ¶¶ 22-31. "*Senior Team*" has the definition as set forth in the Complaint.

4

equipment manufacturing operation, would manufacture MSGs for Carpoff; and (2) Ahern Rentals, a heavy equipment rental operation, would place the MSGs in the Ahern Rentals-fleet for rent.[10] Don Ahern and Evan Ahern (and the Defendants) understood DC Solar's business and operations and the importance of the tax-equity financing structure.[11]

For the Aherns, working with Carpoff and DC Solar was a package deal, *i.e.,* the relationship with Ahern Rentals was dependent on the relationship with Xtreme, and vice versa.[12]

Carpoff worked with the Aherns to defraud DC Solar investors. The Aherns were motivated by (1) greed; and (2) their close relationship with Carpoff.[13] Some examples follow.

**First**, Carpoff sought to defraud Fund IX, an investor that wanted a direct contractual relationship with an MSG-lessee unaffiliated with DC Solar. So, Carpoff and the Aherns agreed that Ahern Rentals would pose as the MSG sub-lessee that itself would sub-lease the MSGs to an entity named Efficient Energy, which was purportedly unrelated to DC Solar. But the Aherns (and the Defendants) knew that Efficient Energy was just a strawman for Carpoff and thereby helped defraud and harm Fund IX and DC Solar. The Defendants hid that Fund IX was being paid lease payments originating from DC Solar, rather than an unrelated MSG sub-lessee.[14]

Carpoff paid-off the Aherns to serve in this strawman-role by paying Ahern Rentals nearly $1 million per year for zero (or close to zero) legitimate work. All the Aherns had to do was facilitate a circular flow of payments, lying to Fund IX - which they did through 2018.[15]

**Second**, Evan Ahern backdated a sub-lease of MSGs (between Ahern Rentals and DC Solar), which Evan Ahern knew or should have known would be used to defraud investors. Making it worse, this transaction was bogus-on-its-face, as it documented that Ahern Rentals would lease 1,000 MSGs *from* DC Solar and then lease those same 1,000 MSGs right back *to* DC Solar – for the same price. There was no business justification for these shenanigans and Evan Ahern knew

---

[10] Compl., ¶¶ 32 and 35.
[11] Compl., ¶¶ 37-39.
[12] Compl., ¶ 36.
[13] Compl., ¶¶ 78-103.
[14] Compl., ¶¶ 40-64.
[15] Compl., ¶¶ 51-64 & Exhibit 1.

5

or should have known Carpoff would use these lease documents to defraud investors.[16]

**Third**, Evan Ahern falsely signed "Acceptance Certificates" which purported to verify that MSGs were delivered, tested, and received. As Evan Ahern knew, these were very important to the investors' investment decision since they (from an outsiders' view) evidenced that MSGs were being used by end-users.[17] Also, Evan Ahern back-dated at least one Acceptance Certificate making it appear to have been signed in February 2016, when actually signed in June 2018.[18]

**Fourth**, Evan Ahern vouched for Carpoff and lied (affirmatively or through omission) to potential investors to induce investment by those investors into the Carpoff Ponzi Scheme.[19] Evan Ahern did so at least multiple times in 2017 and at least once in 2018.[20]

**Fifth**, Evan Ahern took bribes from Carpoff, including 3 separate wires to Evan Ahern-controlled entities, each in the six-figures and totalling $450,000, on (1) April 27, 2017; (2) June 21, 2018; and (3) November 14, 2018.[21]

### (C) The Total Transfers Sought to be Avoided and Recovered

Carpoff caused DC Solar to make the Ahern Transfers (as defined in the Complaint) to Ahern, totaling $17,272,547.32. Exhibit 1 to the Trustee's Complaint identifies the transferor, transferee, date, and amount for each of these transfers.

Carpoff caused DC Solar to make the Xtreme Transfers (as defined in the Complaint) to Xtreme, totaling $15,826,270.04. Exhibit 2 to the Trustee's Complaint identifies the transferor, transferee, date, and amount for each of these transfers.

### III. LEGAL STANDARD FOR A MOTION-TO-DISMISS, GENERALLY

A motion to dismiss in an adversary proceeding is governed by F.R.B.P. 7012(b). The trial court must accept as true all facts alleged in the complaint and must draw all reasonable inferences in favor of the plaintiff. Dismissal is proper only where it is beyond doubt that plaintiff can prove

---

[16] Compl., ¶¶ 65-70.
[17] Compl., ¶¶ 104-10.
[18] Compl., ¶¶ 111-13.
[19] Compl., ¶¶ 87-96.
[20] Compl., ¶¶ 87-96.
[21] Compl., ¶¶ 114-17; *see also* ¶ 110.

no set of facts in support of his claim which would entitle him to relief.[22]

The Trustee's claims for actual fraudulent transfer must comply with Rule 9(b), and "state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." However, a "more liberal standard for pleading fraud with particularity is applied in bankruptcy cases. This less stringent standard is predicated upon the fact it is often the trustee, a third party, who is pleading fraud based on second-hand information."[23] Moreover, "less particularity is required where plaintiff is not asserting that the fraud was against himself personally, but rather it was committed against a third party."[24]

## IV. ARGUMENT

### (A) The Trustee has Standing to Bring the Avoidance Claims

The Trustee has the exclusive standing to bring avoidance claims on behalf of the estate. *See e.g., In re Parmetex, Inc.*, 199 F.3d 1029, 1031 (9th Cir. 1999); *In re Old Canal Fin. Corp.*, 550 B.R. 519, 530 (C.D. Cal. 2016) ("[T]rustee of a bankruptcy estate had exclusive standing to sue a third party 'seeking avoidance of a fraudulent transfer' on the grounds of insufficient consideration."); *see also, generally, Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir. 2010) (identifying "fraudulent conveyance" as a type of action "properly brought by a [bankruptcy] trustee").[25] The Defendants do not cite this law in their MTD.

Instead, the Defendants wrongly rely on *Smith v. Arthur Anderson*, 421 F.3d 989 (9th Cir. 2005). MTD, pg. 5-6. There, the trustee asserted claims against the debtor's former officers and directors, attorneys, auditors, and investment bankers for breach of fiduciary duty, breach of contract, and professional malpractice – there is no discussion whatsoever of avoidance claims. And the Defendants wrongly rely on *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d

---

[22] *Odom v. Microsoft Corp.,* 486 F.3d 541, 545 (9th Cir. 2007).
[23] *Smith v. Arthur Andersen LLP,* 175 F. Supp. 2d 1180, 1201 (D. Ariz. 2001) (citations omitted).
[24] *Id.* at 1202.
[25] *See also, e.g., In re Linder Oil Co.*, 2021 WL 5227543, *3 (Bankr. W.D. La. Oct. 27, 2021) ("[T]he Trustee has exclusive standing to pursue the Chapter 5 claims under the Bankruptcy Code."); *In re Morris*, 2011 WL 4544057, *3 (Bankr. N.D. Ohio Sept. 29, 2011) ("The chapter 7 trustee has exclusive standing to prosecute or settle avoidance actions for the purpose of orderly administration of the bankruptcy estate.")

7

Cir. 1991). MTD, pg. 5-6. Not only does *Wagoner* solely address tort claims brought by a trustee (just like *Smith*) and therefore is inapposite, but the Ninth Circuit Court of Appeals and other courts within the Circuit explicitly reject *Wagoner* for the exact proposition the Defendants argue to this Court.[26] The Defendants cite none of this law.

The Defendants then assert that the Trustee inadequately pled a connection between Fund IX (one of the investors which the Defendants knowingly helped Carpoff defraud) and defendant-Xtreme, arguing that this is required for the Trustee's standing to bring suit. MTD, pg. 5-6.[27]

But there is no such requirement. *See In re Medina*, 619 B.R. 236, 242-45 & n.11 (B.A.P. 9th Cir. 2020) (citing cases) aff'd, 2021 WL 3214757, *1-2 (9th Cir. July 29, 2021); *In re Mack Indus., Ltd.*, 2021 WL 6015700, *11 (Bankr. N.D. Ill. Dec. 21, 2021) ("Under § 548(a)(1)(A), the intent 'to hinder, delay, or defraud' creditors **need not target any particular entity or individual** as long as the intent is generally directed toward present or future creditors of the debtor.") (emphasis added, citing cases and treatise).[28]

### (B) The Defendants' IPD Argument Should be Rejected

Ninth Circuit law is clear that IPD – part of the doctrine of Unclean Hands – does not apply to the Trustee's Avoidance Claims. The Defendants' arguments are frivolous. *See e.g., In re Liu*, 611 B.R. 864, 880 (B.A.P. 9th Cir. 2020) (preference claims); *In re Delano Retail Partners, LLC*, 2014 WL 4966476, *5 (Bankr. E.D. Cal. Sept. 29, 2014); *In re Hawaiian Telcom Commc'ns, Inc.*,

---

[26] *See CarrAmerica Realty Corp. v. Nvidia Corp.*, 302 F. App'x 514, 517 (9th Cir. 2008), as amended (Jan. 22, 2009), as amended (Mar. 10, 2009) ("The Creditors argue that Trustee standing is barred under *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir.1991) ("A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."). However, the *Wagoner* rule has been much criticized and we decline to follow it. *See In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1003–04 (8th Cir. 2007) (listing authorities rejecting *Wagoner* and concluding that the *in pari delicto* defense has nothing to do with trustee standing)."); *see also Donell v. Nixon Peabody LLP*, 2012 WL 3839402, *5 (C.D. Cal. Sept. 5, 2012) (same).

[27] The Trustee notes that she pled the existence of multiple triggering creditors, including Fund IX. *See* Compl., ¶¶127-28. But this does not appear to be the Defendants' challenge.

[28] *See also Tavenner v. Smoot*, 257 F.3d 401, 407 (4th Cir. 2001) ("Nothing in § 548 indicates that a trustee must establish that a fraudulent conveyance actually harmed a creditor."); *In re Sherman*, 67 F.3d 1348 (8th Cir. 1995) ("[A]ctual harm [to a creditor] is not required [for avoidance claims]; trustee must show only that debtor acted with intent to hinder, delay, or defraud creditors.").

8

483 B.R. 217, 221 (Bankr. D. Haw. 2012); *In re Maui Indus. Loan & Fin. Co.*, 454 B.R. 133, 136 (Bankr. D. Haw. 2011) ("The in pari delicto defense is inapplicable when a trustee brings an action under sections 544(b) and 548."); *see also In re Com. Money Ctr., Inc.*, 350 B.R. 465, 486 (B.A.P. 9th Cir. 2006).

This is the law across the country. *See In re Moore,* 2022 WL 839702, n.5 (Bankr. E.D. Va. Mar. 21, 2022) ("There is broad consensus across multiple jurisdictions that the [IPD] defense is inapplicable when a Trustee brings an avoidance action under §§ 544 or 548.") (citing cases).

The Defendants conceal this law, and instead cite inapposite decisions addressing a bankruptcy trustee's prosecution of tort claims. MTD, pgs. 6-8.

The statutory Avoidance Claims (federal and state) and their defenses are explicitly set forth by the legislature and cannot be re-written by the Defendants.

But in the alternative, to the extent that this Court finds that the IPD defense (part of the doctrine of Unclean Hands) is potentially applicable, which it is not, this Court should reject its application, which is an affirmative defense for which the Defendants bear the burden: (1) as inapplicable as a matter of law; and/or (2) in its substantial discretion.[29] The Trustee reserves the right to supplement her argument to the extent necessary or appropriate.

### (C) The Trustee Has Properly Pled Her Avoidance Claims, and No Affirmative Defense is Applicable – Especially at this Stage

The Defendants assert that the Trustee's claims for preference and actual fraudulent

---

[29] *See e.g., In re Delano Retail Partn., LLC*, 2014 WL 4966476, *5 (Bankr. E.D. Cal. Sept. 29, 2014) ("California law treats the [IPD] doctrine as part of the doctrine of 'unclean hands.'"); *Goldsmith Seeds v. Great Am. Ins. Co.,* 2016 WL 193494, *10 (Cal. Ct. App. Jan. 14, 2016) ("It is well settled that public policy may favor the nonapplication of the doctrine as well as its application."); 2 Cal. Affirmative Def. § 45:3 (2d ed. 2021) (Unclean hands is unavailable to a defendant who profited and was not prejudiced); *McHale v. Silicon Valley L. Grp.*, 2011 WL 6990187 (N.D. Cal. Dec. 14, 2011) (adverse interest and sole actor exception); *In re Yellow Cab Coop.,* 2019 WL 10528131 (Bankr. N.D. Cal. Dec. 18, 2019); *Glob. Money Mgmt., L.P. v. McDonnold*, 2008 WL 11337623, *9 (S.D. Cal. Feb. 27, 2008) (replacement of wrongdoing management pre-petition, and thus "as of the commencement of the case"); *Shapiro v. Pratt*, 2004 WL 99200, *3 (Cal. Ct. App. Jan. 22, 2004) ("Even if there were some theoretical basis for the doctrine of unclean hands, it will not be applied if to do so would be harmful to the public interest."); *See e.g., In re Gomes*, 219 B.R. 286, 297 (Bankr. D. Or. 1998) (avoidance and recovery of fraudulent transfers is a "public good").

9

1 transfer are deficient, conceding the sufficiency of the Trustee's constructively fraudulent transfer
2 claims. MTD, pg. 8:17-18. Still, the Defendants are wrong.

3       **First**, the Trustee properly pled the elements of her claims to avoid and recover preference
4 payments; this is unchallenged by the Defendants. Rather, the Defendants argue an affirmative
5 defense, specifically Section 547(c)(2) of the Code ("***Ordinary Course Defense***"). The Defendants
6 make the naked argument that "the Trustee's own allegations show no more than transfers were
7 made in the ordinary course of business," without citing to the Trustee's Complaint or providing
8 any other support. MTD, pg. 8:24-26. The Defendants' argument fails.

9       The Ordinary Course Defense is an affirmative defense and the burden rests on the
10 Defendants.[30] To rely on this defense, the favored creditor "must show (1) the baseline of past
11 practices between itself and the debtor; and (2) that the relevant payments were ordinary in relation
12 to those past practices." *In re Evergreen Oil, Inc.*, 2017 WL 1371296, *3 (B.A.P. 9th Cir. Apr. 10,
13 2017). The Trustee's Complaint shows neither; to the contrary, the Trustee pleads the deviant
14 relationship between DC Solar and the Defendants, including: (1) bribes to Defendants' senior
15 executive; (2) millions of dollars of transfers to defraud investors, such as Fund IX; and (3) Carpoff
16 and the Aherns' decision to defraud and effectuation of that decision through back-dating of
17 documents, lying to investors when vouching for Carpoff, and otherwise.

18       And in any event, Ninth Circuit binding law is that the Ordinary Course Defense is
19 inapplicable where a Ponzi scheme is perpetrated through the debtor. *See Henderson v. Buchanan*,
20 985 F. 2d 1021, 1025 (9th Cir.1993) *citing In re Bishop, Baldwin, Rewald, Dillingham & Wong,*
21 *Inc.*, 819 F. 2d 214, 217 (9th Cir.1987) & *In re Bullion Rsrv. of N. Am.*, 836 F. 2d 1214, 1219 (9th
22 Cir. 1988). The Defendants do not cite this binding law in their MTD.

23       The Defendants fail to satisfy their burden, fail to cite binding law adverse to their position,
24 and mischaracterize the Trustee's Complaint and her allegations.

25       **Second**, the Defendants allege that the Trustee has not pled her "fraud claims" (*i.e.,* claims
26 for actual fraudulent transfer) with particularity under Rule 9(b). MTD, pg. 9:3-27. The Defendants

---

[30] *In re BR Festivals, LLC*, 2015 WL 1216836, *3 (Bankr. N.D. Cal. Mar. 11, 2015).

assert, incredibly, that the Trustee's complaint has "myriad problems" which are "obvious." MTD, pg. 9. The Defendants support this position by arguing that the Trustee did not plead a connection between the Defendants and any fraudulent misstatement.

The Defendants are wrong on the law and the facts. <u>First</u>, the Trustee's actual fraudulent transfer claims only require that the Trustee allege that the transfer at issue was made with the actual intent to hinder, delay, or defraud creditors; no showing of actual harm to a creditor is necessary.[31] <u>Second</u>, binding Ninth Circuit law (uncited by the Defendants) is that "the mere existence of a Ponzi scheme" is sufficient to establish the actual intent to hinder, delay or defraud creditors under 11 U.S.C. § 548(c) and a state's fraudulent transfer statute.[32] It is unchallenged by the Defendants (and in fact admitted, *see* MTD pg. 3:23-25) that the Trustee has pled the existence of the Ponzi scheme. And the Trustee explicitly pled the facts supporting the connection between the Carpoff Ponzi Scheme and the Defendants. *See, e.g.,* Section II above.

<u>Third</u>, the Defendants mislead by asking this Court to look in the wrong place. It is the *intent of the transferor* that is relevant, and <u>not</u> the intent of the transferee.

> Actual fraudulent conveyance claims under Section 548(a)(1)(A) **turn on the intent of the debtor in making the transfer; the state of mind of the transferee is irrelevant**. [citing cases] **This intent "to hinder, delay, or defraud" creditors need not target any particular entity or individual as long as the intent is generally directed toward present or future creditors of the debtor**. See 5 Collier on Bankruptcy ¶ 548.04[1] (15th ed. rev. 2006). Moreover, only the intent to hinder, delay or defraud need be shown; success in this regard need not be demonstrated for a transfer to constitute an actual fraudulent conveyance.

*In re Bayou Grp., LLC*, 439 B.R. 284, 304–05 (S.D.N.Y. 2010) (emphasis added); *see also In re Grail Semiconductor,* 2017 WL 1655180, *7 (Bankr. E.D. Cal. May 1, 2017) ("The relevant 'fraudulent intent' in a fraudulent transfer action is the transferor's fraudulent intent—not the defendant transferee's.") (citing cases, quotations omitted).

---

[31] *See Medina*, 619 B.R. at 242-45 & n. 11 (citing cases) aff'd, 2021 WL 3214757, *1-2; *Mack*, 2021 WL 6015700, *11 ("Under § 548(a)(1)(A), the intent 'to hinder, delay, or defraud' creditors need not target any particular entity or individual as long as the intent is generally directed toward present or future creditors of the debtor.") (citing cases and treatise).
[32] *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008); *In re DBSI Inc.*, 593 B.R. 795, 821 (Bankr. D. Idaho 2018), aff'd sub nom. 814 F. App'x 279 (9th Cir. 2020) (citing cases).

Fourth, even if required, the Trustee explains in detail how the Defendants' wrongdoing in connection with the transfers made to them was ongoing through 2018, including (1) accepting bribes; (2) lying when vouching for Carpoff to potential investors; and (3) defrauding Fund IX and accepting their payoff through every payment.

Thus, the transfers need not be tied to the transferee's bad acts (even though the Trustee has done so); the Trustee rightly connects them to the transferor and its intent.

**Third**, the Defendants argue that the Trustee "lumped" together both Ahern Rentals and Xtreme, arguing that the Trustee failed in her pleading burden as a result. MTD, pg. 9. This should be rejected. First, it is the transferor's intent that is relevant for an actual fraud count and not the intent of either transferee, as explained above. The pleading-stage is not the correct time for the Defendants to argue their 11 U.S.C. § 548(c) (or state law equivalent) defense, which is an affirmative defense and for which they bear the burden.

Second, the Trustee explains in detail that Ahern Rentals and Xtreme had joint ownership, were under joint control, had the same senior management, and that Carpoff's and the Aherns' decision to do business with one was contingent on doing business with the other. Compl., ¶¶ 22-37. Thus, the Trustee appropriately pleads their joint knowledge.[33]

And third, the Defendants ignore the Trustee's explicit pleading:

77. Xtreme was a willing participant in Carpoff's wrongdoing, including by (1) manufacturing MSGs knowing that Carpoff was making misrepresentations to investors and engaged in other wrongdoing; (2) providing information about itself to be included in DC Solar marketing materials which it knew would be used to induce new investors to invest with DC Solar; and (3) serving as a reference to investors and potential investors while concealing wrongdoing from them.

The Defendants' arguments are wrong on the law and the facts. The MTD should be denied.

---

[33] *Northern Natural Gas Co. v. Sup. Court*, 64 Cal App. 3d 983 (1976) ("Inasmuch as Larson was president and chairman of the board of Geni-Chlor and also president of Propane Gas, we think that Propane Gas was also chargeable with the same imputed knowledge that Larson was chargeable with as president of Geni-Chlor."); *see also NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647, *27-28 (Del. Ch. Nov. 17, 2014); *Mercy Med. Ctr., Inc. v. United Healthcare of the Mid-Atl., Inc.*, 149 Md. App. 336, 366 (2003).

## V. CONCLUSION

The Defendants cite inapplicable law and fail to cite binding law. The Defendants' arguments are wrong. The MTD should be denied.

## VI. IN THE ALTERNATIVE, REQUEST FOR LEAVE TO RE-PLEAD

The Trustee has properly pled her claims, no affirmative defense is applicable (especially at this stage), the Defendants' arguments should be rejected, and the MTD should be denied.

However, in the alternative and if the Court finds the Trustee's Complaint deficient in any respect, the Trustee respectfully requests leave to file an amended complaint.[34] The Trustee's complaint is her original complaint commencing this proceeding. The Trustee has acted in good faith, without delay, the Defendants would suffer no prejudice,[35] and the Trustee expects she can plead additional facts if directed by the Court. Some examples include:

- Other items in response to the Defendants' assertion of the IPD defense, including the Defendants' wrongdoing, their benefit from involvement in the scheme, the Trustee's innocence, the creditor body's innocence, Carpoff's adversity to DC Solar and non-application of the sole actor exception.

- Other connections between the Defendants and DC Solar.

- Other wrongdoing by the Defendants, including in 2017 and 2018, and further direct connection with DC Solar and the transfers sought to be avoided.

- Evan Ahern testifying falsely under oath at his R. 2004 examination to attempt to conceal his wrongdoing.

The Trustee notes that multiple courts have found that a bankruptcy trustee's complaint, when dismissed on IPD / Unclean Hands grounds, can be (and was) cured in an amended complaint. *See e.g., Yellow Cab II*; *Rollaguard*, 591 B.R. at 925.

**WHEREFORE**, the Trustee prays for and demands an Order as follows:

(1) Denying the Defendants' MTD.

(2) In the alternative, granting the Trustee leave to amend her Complaint.

---

[34] *Edwards v. Leaders in Comm. Alt., Inc.*, 2021 WL 1235840, *2 (9th Cir. Apr. 2, 2021).
[35] *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Prejudice is the touchstone of the inquiry under rule 15(a).") (quotations omitted).

(3) Any other relief, equitable or otherwise, that this Court deems just and proper.

DATED: May 5, 2022.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq., Attorney for Plaintiff
Christina W. Lovato

**MELAND BUDWICK, P.A.**

*/s/ Michael S. Budwick*
Michael S. Budwick, Esq., Admitted Pro Hac Vice
Solomon B. Genet, Esq., Admitted Pro Hac Vice
Meaghan E. Murphy, Esq., Admitted Pro Hac Vice
Gil Ben-Ezra, Esq., Admitted Pro Hac Vice
Alexander E. Brody, Esq., Admitted Pro Hac Vice
Attorneys for Plaintiff Christina W. Lovato

**CERTIFICATE OF SERVICE**

I certify that on May 5, 2022, I caused to be served the following document(s):

**TRUSTEE'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [ECF No. 6]**

I caused to be served the above-named document(s) as indicated below:

✔ a. Via ECF to:

ALEXANDER E. BRODY    abrody@melandbudwick.com ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com mrbnefs@yahoo.com
MICHAEL S. BUDWICK    mbudwick@melandbudwick.com ltannenbaum@melandbudwick.com ltannenbaum@ecf.courtdrive.com
MARK J. CONNOT    mconnot@foxrothschild.com dloffredo@foxrothschild.com
JEFFREY L HARTMAN    notices@bankruptcyreno.com abg@bankruptcyreno.com
CHRISTINA W. LOVATO    trusteelovato@att.net  NV26@ecfcbis.com

DATED: May 5, 2022.

                                              */s/ Michael S. Budwick, Esq.*
                                              Michael S. Budwick, Esq.